**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS NEMETH, | **)** | CASE NO. 1:21-cv-02064 |
| | **)** | |
| Plaintiff, | **)** | JUDGE CHARLES E. FLEMING |
| | **)** | |
| vs. | **)** | |
| | **)** | |
| MONTEFIORE, *et al.*, | **)** | |
| | **)** | **MEMORANDUM OPINION AND** |
| Defendants. | **)** | **ORDER** |

Before the Court is Plaintiff's Motion for Leave to file Motion to Remand Instanter and Motion for Remand (ECF No. 16), and Defendants Montefiore, the Montefiore Foundation, The Montefiore Home, The Montefiore Housing Corporation, and The Menorah Park Foundation's (the "Facility Defendants") Motion for Leave to File a Sur-Reply Instanter (ECF No. 21).  The Facility Defendants and Defendant Ariel Hyman oppose remand, arguing that federal question and/or federal officer-based jurisdiction exists over Plaintiff's claims, and that this matter was properly removed to federal court (ECF Nos. 18 & 19).[1]  For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion to Remand for lack of jurisdiction.  The Court also **GRANTS** Plaintiff's Motion for Leave to File Motion to Remand Instanter and Defendants' Motion for Leave to File Sur-Reply Instanter.

## I.     FACTUAL BACKGROUND

On September 24, 2021, Plaintiff Thomas Nemeth, in his capacity as Executor of the Estate of Anthony Berardinelli ("Plaintiff"), filed a Complaint for medical malpractice, nursing home

---

[1] Defendant Ariel Hyman filed a Memorandum in Opposition to Plaintiff's Motion to Remand on December 23, 2021. (ECF No. 18).  The Facility Defendants filed a separate but identical Memorandum in Opposition to Plaintiff's Motion to Remand on the same day.  (ECF No. 19).  For ease of reference, the Court will refer only to Defendant Hyman's Memorandum.

neglect, and wrongful death against Defendants in the Cuyahoga County Court of Common Pleas.[2]
(ECF No. 1-1, Complaint).  The Complaint alleges that Defendants negligently, recklessly, and/or
willfully and wantonly failed to adopt and/or utilize responsible testing, reporting, quarantine, and
containment procedures in response to the global COVID-19 pandemic, resulting in Anthony
Berardinelli's ("Decedent") untimely death.  (*Id.* at PageID# 10–11, ¶¶ 13–17).  Specifically,
Plaintiff alleges:

- "Defendants acted with reckless disregard for the consequences to Decedent and
  other residents with regard to covid 19 quarantine procedures, covid 19
  containment procedures, and covid 19 procedures such that Decedent contracted
  Covid as a direct result and so as to affect the life or health of Decedent and other
  residents and this was with intentional misconduct and willful or wanton
  misconduct."  (*Id.* at PageID# 10, ¶ 13).

- "Defendants, once Decedent contracted covid 19, were negligent and breached the
  standard of care in caring for Decedent in that Decedent exhibited signs and
  symptoms requiring emergency hospitalization and treatment, referral to a doctor
  and oxygen and Defendants failed to provide emergency hospitalization and
  treatment, referral to a doctor and oxygen and this was a breach of the normal
  standard of care."  (*Id.*).

- "Moreover, [Defendants] were negligently, recklessly, and with malicious intent
  conducting improper testing and falsifying tests."  (*Id.* at PageID# 11, ¶ 16).

- "[Defendants] intentionally hid the fact that other patients and/or residents of
  Montefiore had SARS-COV2 and/or any other form of covid-19 or covid-19 related

---

[2] *See Nemeth v. Montefiore, et al.*, Cuyahoga County Court of Common Pleas case no. CV 21 953475.

illness.  This was not limited to the well published and admitted false testing by Defendants but went on prior to it being well published and admitted to by Defendants and directly affected Decedent."  (*Id.*).

- "Defendants did not properly quarantine new admissions and/or new residents when they arrived at their facilities."  (*Id.* at ¶ 17).

- "Defendants did not follow well established guidelines and standards for quarantine of new admissions and/or residents."  (*Id.*).

- "Defendants did not follow basic infection prevention procedures such as washing hands and wearing masks."  (*Id.*).

- "In addition to intentionally falsifying covid tests on residents Defendants also purposefully, willfully, and recklessly did not properly test their employees that would come into contact with residents such as Decedent. Moreover, [Defendants] forced employees to work that had symptoms of covid-19."  (*Id.*).

- "All Defendants failed to provide safe medical, diagnostic, and preventative care to Plaintiff's Decedent."  (*Id.* at PageID# 12, ¶ 19).

Defendants timely removed the action on November 1, 2021.[3]  Defendants base removal on the presence of a federal question, arguing that the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 2476d(d), 247d-6e (the "PREP Act" or "Act"), supplies an exclusive federal cause of action for willful misconduct claims against "covered persons" in the

---

[3] Plaintiff avers in his Motion to Remand that Defendants' removal of the state-court action was untimely. 28 U.S.C. § 1446(b) gives Defendants thirty days to remove a state-court action allegedly raising a federal question.  The Federal Rules of Civil Procedure also provide that, to calculate time, when the last day of a stated period of time is on a weekend or legal holiday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1)(C).  Here, Defendants produced service records establishing that they were all served on September 30, 2021.  (ECF No. 1-1, PageID# 19–28).  The 30-day time period for removal expired on October 30, 2021, which was a Saturday.  Defendants filed their Notice of Removal on Monday, November 1, 2021. (ECF No. 1).  Thus, the removal of this action was timely.

administration of "covered countermeasures"—here, nursing home personnel administering COVID-19 diagnostic tests—and expressly preempts state law.  (ECF No. 1, Notice of Removal, PageID# 2).

Plaintiff filed his Motion to Remand on December 9, 2021, accompanied by a Motion for Leave Instanter.  (ECF No. 16).  Plaintiff argues that this Court is without jurisdiction because the Complaint does not mention or make any claims under the PREP Act, and because the PREP Act does not completely preempt state law.  (*Id.*).  Defendants oppose remand, asserting that Plaintiff's claims relating to Defendants' "willful misconduct" when administering COVID-19 tests to nursing home residents clearly fall within the scope of the PREP Act, which completely preempts state law and provides the United States District Court for the District of Columbia with exclusive jurisdiction over Plaintiff's claims.  (ECF No. 18, PageID# 151–61).  Alternatively, Defendants argue that jurisdiction may also be conferred under the federal officer removal statute, 28 U.S.C. 1442(a)(1), because Defendants were acting under the Centers for Medicare & Medicaid Services' constantly evolving directives while providing an essential service on the government's behalf to Medicare and Medicaid recipients.  (*Id.* at PageID# 161–62).  In addition to these arguments, Plaintiff's Reply Brief and the Facility Defendants' Sur-Reply Brief argue the merits of a recently decided case in this District, *Singer v. Montefiore*, 577 F. Supp. 3d 633 (N.D. Ohio 2021), which remanded seven consolidated cases concerning the same claims against the same Defendants for lack of federal court jurisdiction.  (ECF Nos. 20 & 21).

## II.    LAW AND ANALYSIS

### a.  MOTIONS FOR LEAVE

#### i.  Plaintiff's Motion for Leave to File Motion to Remand Instanter

As an initial matter, Plaintiff's Motion to Remand was accompanied by a Motion for Leave Instanter because the Motion to Remand was not filed within 30 days of removal as required by 28 U.S.C. 1447(c).  Section 1447(c) states, in pertinent part:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

Plaintiff's Motion for Leave explains that his Motion to Remand was not filed within 30 days because of confusion at the state-court level concerning multiple plaintiffs filing multiple, similar actions, and discussions with Defendants concerning possible consolidation of those matters.  (ECF No. 16, PageID# 73).  Defendants have not expressly opposed Plaintiff's request for leave, having instead argued only the merits of removal and remand.  Given the lack of opposition, Plaintiff's stated reasons for seeking leave, and Plaintiff's challenge to this Court's jurisdiction within his Motion to Remand, Plaintiff's Motion for Leave to File Motion to Remand Instanter is hereby **GRANTED**.

#### ii.  Defendants' Motion for Leave to File Sur-Reply Instanter

The Facility Defendants also sought leave to file a Sur-Reply Instanter (ECF No. 21), explaining that a case discussed in Plaintiff's Reply Brief, *Singer v. Montefiore*, 577 F. Supp. 3d 633 (N.D. Ohio 2021), had not been published when Defendants initially opposed remand.  While the Court generally does not prefer the filing of sur-reply briefs, the publication of a new case within the Northern District of Ohio that is directly relevant to this case justifies this Court's

5

exercise of discretion to grant leave.  *See Key v. Shelby Cty.*, 551 F. App'x 262, 264 (6th Cir. 2014).  As such, the Facility Defendants' Motion for Leave to File Sur-Reply Instanter is hereby **GRANTED**.

### b.  MOTION FOR REMAND

A defendant may remove any civil action brought in state court "of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  If a federal court determines that it lacks subject matter jurisdiction, however, the court must remand the case.  28 U.S.C. § 1447(c).  The party removing a case bears the burden of establishing jurisdiction.  *Nowicki-Hockey v. Bank of Am., N.A.*, 595 F. App'x 420, 421 (6th Cir. 2014) (citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006)).  Because removal jurisdiction implicates federalism concerns, removal statutes are strictly construed and "all doubts should be resolved against removal."  *Mayes v. City of Flint*, 871 F.3d 437, 442 (6th Cir. 2017) (quoting *Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007)).

### i.  The PREP Act

The PREP Act goes into effect when the Department of Health and Human Services Secretary declares a public health emergency.  42 U.S.C. § 247d-6d(b).  The Act provides that covered persons "shall be immune from suit and liability under Federal and State law" for "all claims for loss caused by, arising out of, relating to, or resulting from" the "administration" or "use" of a "covered countermeasure."  42 U.S.C. § 247d-6d(a)(1).  In other words, "there must be a 'causal relationship' between an injury and the 'administration to or use by an individual of a covered countermeasure.'"  *Mitchell v. Advances HCS, LLC*, 28 F.4th 580, 586 (5th Cir. 2022) (quoting 42 U.S.C. § 247d-6d(a)(2)(B)).  For the purposes of this matter, a "covered countermeasure" is "any antiviral, any other drug, any biologic, any diagnostic, any other device,

or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV2 . . . or any device used in the administration of such product."  Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198, 15202 (Mar. 17, 2020) ("Declaration").[4]  "For most who suffer an injury that falls under the immunity provision, the sole remedy is compensation from the 'Covered Countermeasures Process Fund,' as determined by an administrative process."  *Mitchell*, 28 F.4th at 586 (citing 42 U.S.C. § 247d-6e(a)).

The only exception to PREP Act immunity is a claim "for death or serious physical injury proximately caused by willful misconduct," and those claims must be adjudicated by the United States District Court for the District of Columbia.  42 U.S.C. § 247d-6d(d)(1).  *See Cannon v. Watermark Retirement Cmtys., Inc.*, 45 F.4th 137, 139 (D.C. Cir. 2022) (noting that willful-misconduct claims are the sole exception to PREP Act immunity).  However, to fall within the scope of the PREP Act, even willful misconduct claims must involve the "administration" or "use" of a "covered countermeasure."  *See Singer v. Montefiore*, No. 1:21-CV02102, 2021 WL 6111671, at *3 (N.D. Ohio Dec. 27, 2021) ("Put another way, the path to the [willful misconduct] exception in subsection (d) of the statute runs through subsection (a), which requires ["administration" or "use" of] covered countermeasures.").  A plaintiff claiming "willful misconduct" under the PREP Act must first exhaust administrative remedies, and only thereafter may the plaintiff file an action in the United States District Court for the District of Columbia.  42 U.S.C. §§ 247d-6d(d)(1).  *See Hudak v. Elmcroft of Sagamore Hills*, 566 F. Supp. 3d 771, 784 (N.D. Ohio 2021); *Mitchell*, 28 F.4th at 586.

---

[4] This Declaration is the result of the Secretary of the Department of Health and Human Services ("DHHS") using his authority under the PREP Act to declare "the spread of SARS-CoV2 . . . and the resulting disease, COVID-19" a public health emergency under the PREP Act.

## ii.   Federal Question Jurisdiction

A district court has federal question jurisdiction when the action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[T]he vast majority of cases brought under the general federal-question jurisdiction . . . are those in which federal law creates the cause of action." *Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1012 (6th Cir. 2018) (quoting *Hampton v. R.J. Cormann R.R. Switching Co.*, 683 F.3d 708, 711–12 (6th Cir. 2012)). To determine whether a complaint asserts a federal cause of action, federal courts employ the well-pleaded complaint rule. *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 514 (6th Cir. 2003). Under this rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Finally, Defendants may not remove a case to federal court "on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint." *Id.*

There are, however, exceptions to the well-pleaded complaint rule. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). One relevant exception is the complete preemption doctrine. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007). Under this doctrine, removal is proper "when the complaint, on its face, alleges only state law claims but . . . those claims would also state a cause of action under a federal statute that 'completely preempts' an area of state law." *Kelton v. Cleveland Clinic Found.*, No. 1:12 CV 511, 2012 WL 1906363, at *2 (N.D. Ohio May 25, 2012) (quoting *Peters v. Lincoln Elec.*, 285 F.3d 456, 469 n.11 (6th Cir. 2002)).

8

Complete preemption is not ubiquitous.  "The Supreme Court has recognized only three completely preemptive statutes: the Employee Retirement Income Security Act ("ERISA"), the Labor Management Relations Act ("LMRA"), and the National Bank Act," each of which include an exclusive federal cause of action.  *Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393, 408 (3d Cir. 2021).  Beyond those above-listed statutes, the Court has limited the complete preemption doctrine to exclude "mere incorporation of federal statutory standards into a state-law tort action."  *AmSouth Bank v. Dale*, 386 F.3d 763, 777 (6th Cir. 2004) (citing *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 807–12 (1986)).  Instead, complete preemption requires a finding that "the federal statute[] at issue provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action."  *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 564 (6th Cir. 2007) (quoting *Beneficial Nat'l Bank*, 539 U.S. at 7–8 (citing *Cent. Bank v. First Interstate Bank*, 511 U.S. 164, 176–77 (1994))).  Notably, courts generally recognize that "Congress knows how to enact exclusive private rights of action when it chooses to do so."  *Id.*; *Hudak v. Elmcroft of Sagamore Hills*, 566 F. Supp. 3d 771, 782 (N.D. Ohio 2021).

### 1.  *Plaintiff's claims fall outside of the scope of the PREP Act.*

Plaintiff's claims do not fall within the purview of the PREP Act because Plaintiff does not assert that Decedent's death was "caused by, arose out of, related to, or resulted from" the "administration," or "use" of a "covered countermeasure."  The "covered countermeasure" relevant to this action concerns a diagnostic COVID-19 test.  Defendants insist that paragraphs 16 and 17 of the Complaint provide an unambiguous link between Defendants' administration and use of COVID-19 tests and Decedent's death.  (ECF No. 18, PageID# 152).  Those paragraphs state, in pertinent part, that Defendants "were negligently, recklessly, and with malicious intent

conducting improper testing and falsifying tests[;]" that Defendants admitted to "false testing[;]" and that, "[i]n addition to intentionally falsifying covid tests on residents Defendants also purposefully, willfully, and recklessly did not properly test their employees that would come into contact with residents such as Decedent." (ECF No. 1-1, PageID# 11, ¶¶ 16–17).

The bulk of the allegations in paragraphs 16 and 17 allege failures to act which are not covered by the PREP Act.  The Secretary defined the "administration" of a covered countermeasure as the "physical provision of the countermeasures to the recipients."  Declaration, 85 Fed. Reg. 15,198, 15,200 (Mar. 17, 2020).  Plaintiff's claims, however, are not based on an affirmative *provision* of a countermeasure, but on Defendants' *failure* to enact quarantine or containment procedures, their *failure* to accurately report COVID-19 test results, their *failure* to administer or procure emergency medical treatment for Decedent, and their *failure* to adequately test their employees for COVID-19 prior to interacting with residents; the Complaint focuses almost exclusively on Defendants' inactions rather than their actions, which takes those allegations outside the parameters of the Act. *See Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210 (2022) (explaining that a failure to use a "covered countermeasure" "is the opposite of a contention that a covered countermeasure caused harm"); *Friedman v. Montefiore*, No. 1:21-cv-2083, --- F.4th ----, 2022 WL 3584481, at *8 (N.D. Ohio July 11, 2022) (holding that falsification of COVID-19 test results subsequent to the test's administration to an individual is not an allegation concerning "the 'administration' or 'use' of a covered countermeasure").

Having alleged almost entirely inaction, nearly all of Plaintiff's claims do not, by definition, fall within the PREP Act's scope.  To the extent that the Complaint may be interpreted as alleging that the Defendants negligently, rather than willfully, "conducted improper testing," the Court is tasked with determining whether the PREP Act completely preempts state law.

### 2. *The PREP Act does not completely preempt state law.*

Of the five Circuit Courts to determine whether the PREP Act completely preempts state law, none have found in the affirmative. *Maglioli v. Alliance HC Holdings, LLC*, 16 F.4th 393 (3d Cir. 2021) (limiting preemption to willful-misconduct claims); *Mitchell v. Advanced HCS, LLC*, 28 F.4th 580 (5th Cir. 2022) (holding that the PREP Act does not completely preempt negligence claims, since the "willful-misconduct cause of action creates 'a standard for liability that is more stringent than a standard of *negligence in any form* or recklessness'"); *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213 (7th Cir. 2022) (explaining that only section 247d-6d(d)(1) creates a federal claim, and "does not preempt any other kind of claim, let alone occupy the field of health safety"); *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679 (9th Cir. 2022) ("The provision of one specifically defined, exclusive federal cause of action [for willful misconduct] undermines [the] argument that Congress intended the Act to completely preempt all state-law claims related to the pandemic."). *See also Cannon v. Watermark Retirement Cmtys., Inc.*, --- F.4th ----, 2022 WL 3130653 (D.D.C. Aug. 5, 2022) (dismissing appeal for lack of jurisdiction, but noting that the only exclusive federal cause of action within the PREP Act is one for willful misconduct).

The Northern District of Ohio's precedent is consistent with those Circuit Court opinions, holding that "the PREP Act does not completely preempt state law negligence claims arising out of nursing home deaths associated with COVID-19 and the global health crisis." *Friedman v. Montefiore*, No. 1:21-cv-2083, --- F. Supp. 3d ----, 2022 WL 3584481, at *5 (N.D. Ohio July 11, 2022) (citing *Burris v. Montefiore*, No. 1:21-cv-2143, 2022 WL 1120374, at *3 (N.D. Ohio Apr. 14, 2022); *Spring v. Montefiore*, No. 1:21-cv-298, 2022 WL 1120381, at *3 (N.D. Ohio Apr. 14, 2022); *Hudak v. Elmcroft of Sagamore Hills*, 566 F. Supp. 3d 771 (N.D. Ohio 2021)).

The basis for these decisions is more or less the same: with regard to nonwillful-misconduct claims, "the PREP Act does not provide a federal cause of action for covered claims. Indeed, it provides no cause of action at all.  With the exception of willful misconduct, rather than providing a cause of action for covered claims, the PREP Act provides immunity to covered persons protected from liability by the Act."  *Id.* at 782.  *See Schuster v. Percheron Healthcare, Inc.*, 493 F. Supp. 3d 533, 537 (N.D. Tex. 2021) ("The PREP Act does not provide the exclusive cause of action for claims that fall within its scope; in fact for the most part, the Act provides no causes of action whatsoever. The PREP Act is, at its core, an *immunity* statute[.]") (emphasis in original); *Dupervil v. Alliance Health Operations, LLC*, 516 F. Supp. 3d 238, 251 (E.D.N.Y. 2021) ("[I]t is important to note that the PREP Act is, at its core, an immunity statute; it does not create rights, duties, or obligations."). Such immunity is an affirmative defense.  *See Mitchell v. Advanced HCS, LLC*, 28 F. 4th 580, 589 (5th Cir. 2022) (explaining that the "Act's immunity provision[] is defensive," and therefore "does not appear on the face of a well-pleaded complaint"); *Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC*, 535 F. Supp. 3d 709, 717 (M.D. Tenn. 2021) ("Although PREP Act immunity could be an affirmative defense to [a plaintiff's] claims, it does not mean that [the plaintiff's] claims are affirmatively premised on, or on their face necessarily require resolution of, the PREP Act.") (internal quotations omitted)); *Massamore v. RBRC, Inc.*, No. 5:21-cv-66, ---F. Supp. 3d ----, 2022 WL 989178, at *2 (W.D. Ky. Mar. 31, 2022) ("Nothing in the immunity subsection [of the PREP Act] indicates complete preemption: unlike the willful-conduct provision . . . this provision supplies defendants with a federal defense to liability.  It doesn't provide an 'exclusive cause of action.'").

The District of Columbia Circuit Court recently expressed its opinion concerning the structure and mechanics of the Act.  In *Cannon v. Watermark Retirement Cmtys., Inc.*, 45 F.4th

137, 139 (D.C. Cir. 2022), nursing home defendants appealed orders remanding two cases filed in the District Court for the Eastern District of Pennsylvania to the D.C. Circuit Court under the premise that the 42 U.S.C. § 247d-6d(e)(10) gives the D.C. Circuit exclusive jurisdiction over all interlocutory appeals concerning PREP Act willful-misconduct cases. *Id.* Determining that it lacked jurisdiction to hear the appeals, the D.C. Circuit Court explained that the PREP Act includes only "one exception to its grant of immunity for covered countermeasures administered by covered persons: In subsection (d), the Act provides for 'an exclusive federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct.'" *Id.* at *2 (quoting 42 U.S.C. § 247d-6d(d)(1)). While the D.C. Circuit Court did not consider the merits of the appeals, its interpretation of the PREP Act consistently and expressly segregates willful-misconduct claims and the provisions of the Act applicable to those claims from the remainder of the statute.

*Cannon* bolsters the ever-expanding consensus among circuit and district courts across the country that "Congress has not manifested a clear intent for the PREP Act to occupy the field so completely that any 'ostensibly state law claim' touching on a response (or lack thereof) to COVID-19 'is in fact a federal claim' for purposes of removal jurisdiction." *Hudak*, 566 F. Supp. 3d at 782 (quoting *Bolton*, 535 F. Supp. 3d at 720). The PREP Act unambiguously does not create a private, "exclusive federal cause of action for covered claims to which the immunity provision applies"—in other words, claims that *do not* include allegations of willful misconduct. *Hudak*, 566 F. Supp. 3d at 782 (citing *Bolton*, 535 F. Supp. 3d at 720 (distinguishing the PREP Act from the Air Transportation Safety and System Stability Act ("ATSSSA"), where the ATSSSA creates an exclusive "federal cause of action for damages . . . that could only be filed in the United States District Court for the Southern District of New York")).

13

Two federal district courts have strayed from the majority and found that the PREP Act completely preempts state law. Defendants urge the Court to follow *Rachal v. Natchitoches Nursing & Rehab. Ctr. LLC*, No. 1:21-CV-00334, 2021 WL 5449053 (W.D. La. Apr. 30, 2021) and *Garcia v. Welltower OpCo Grp. LLC*, 522 F. Supp. 3d 734 (C.D. Cal. 2021), *abrogated by Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679 (9th Cir. 2022). Notably, since the briefing of Plaintiff's Motion for Remand, *Garcia* has been abrogated by the Ninth Circuit's decision in *Saldana*,[5] which holds that the PREP Act "neither shows the intent of Congress to displace the non-willful misconduct claims brought by the [plaintiffs] related to the public health emergency, nor does it provide substitute causes of action for their claims." *Saldana*, 27 F.4th at 688.

*Rachal* focuses almost entirely on whether the defendants to the case were "covered persons" under the Act (concluding that they were) and addresses the preemption issue in a footnote. *Rachal*, 2021 WL 5449053, at *2 n3. *Rachal* acknowledges that the federal cause of action for damages created by Congress in the PREP Act is exclusive to claims for willful misconduct. *Id.* But *Rachal* fails to acknowledge that nonwillful-misconduct claims lack a similar cause of action, and instead conflates the very broad application of the PREP Act to claims like negligence with the more narrow standard applicable to willful-misconduct claims; while a plaintiff's claim for loss, such as negligence, is within the PREP Act's scope if it is "caused by, arising out of, or relating to, or resulting from the administration to or the use by an individual of a covered countermeasure," 42 U.S.C. § 247d-6d(a)(1), willful misconduct claims must be the

---

[5] Abrogation recognized in *Sigala v. Oxnard Manor, LP*, No. 2:22-cv-02003, 2022 WL 2315778, at *3 n.2 (C.D. Cal. June 27, 2022) (holding that the PREP Act does not completely preempt state law): "Additionally, of twenty-five Ninth Circuit district court opinions analyzing the complete preemptive power of the PREP Act, twenty-four have similarly held that the PREP Act does not completely preempt state law claims. . . . The Oxnard Defendants urge the Court to rely on the lone outlier, *Garcia v. Welltower OpCo Grp.*, a district court case that predates *Saldana*. 522 F.Supp.3d 734 (C.D. Cal. 2021), *abrogation recognized* No. 2:22-cv-00179-SVW-PLA, 2022 WL 845349 (C.D. Cal. Mar. 22, 2022). However, as discussed herein, *Saldana* clearly abrogates *Garcia*. Accordingly, the Court finds no reason to depart from the controlling authority and does not consider *Garcia* in its analysis."

*proximate cause* of the decedent's serious injury or death in order to fall under the PREP Act. 42 U.S.C. § 247d-6d(d)(1). This is significant because *Rachal*'s finding of complete preemption hinges on the existence of a federal cause of action—a claim for willful misconduct—that is "caused by, arising out of, relating to, or resulting from the administration" of a covered countermeasure.[6] Insofar as the PREP Act's text is concerned, this is a logical fallacy precluding reliance on *Rachal*.

Absent persuasive precedent to the contrary, this Court stands with the majority of district and circuit courts and holds that the PREP Act does not completely preempt state law. Whether remand is required, then, hinges on whether Plaintiff's willful-misconduct allegations fall within the scope of the Act, and whether the Act preempts state-law claims concerning willful misconduct.

### 3. Plaintiff's willful misconduct claims are not within the scope of the PREP Act.

Before the Court addresses whether the PREP Act preempts claims for willful misconduct, the Court must first determine whether the Complaint contains any willful misconduct claims within the scope of the Act. As noted above, only claims "for death or serious physical injury proximately caused by willful misconduct, as defined pursuant to subsection (c)" are covered by the PREP Act. *Id.* Rather than focus on the PREP Act's text (and, specifically, the proximate

---

[6] *Rachal* states that Congress intended for the PREP Act to exclusively encompass "claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure," and that, "to the extent Plaintiff's alleged loss was caused by a 'covered person' and arose out of, related to, or resulted from the administration to or the use by an individual of a 'covered countermeasure,' this Court has federal question jurisdiction to apply the provisions of the PREP Act." *Id.* at *2 n.3. But the only exclusive cause of action for damages found by the *Rachal* court was a claim concerning willful misconduct. The mere existence of the Covered Countermeasure Process Fund ["CCPF"], absent language expressing congressional intent that non-willful misconduct claims be completely preempted, does not alone result in preemption. *See Bolton v. Gallatin Ctr. for Rehab. & Healing, LLC*, No. 3:20-cv-00683, 535 F. Supp. 3d 709, 720 (M.D. Tenn. 2021) (holding that, while the creation of the CCPF is similar to the fund created by the ATSSSA, Congress's failure to create a companion exclusive federal cause of action for non-willful misconduct claims prevents designation of the PREP Act as a complete preemption statute).

cause requirement applicable to willful misconduct claims), Defendants argue that the PREP Act encompasses "all claims for loss caused by, arising out of, relating to, or resulting from" the "administration" or "use" of a "covered countermeasure."  42 U.S.C. § 247d-6d(a)(1).  (ECF No. 18, PageID# 152).  Since the Decedent's injuries and death were allegedly "related to" the willful falsification and/or improper use of COVID-19 diagnostic tests administered by Defendants, Defendants argue that the claims should fall within the scope of the Act.  (*Id.*).

### A.  Proximate Cause

Whether Plaintiff's willful-misconduct claim falls within the PREP Act's purview therefore depends on two factors: (1) whether the plaintiff's complaint alleges that willful misconduct *proximately caused* Plaintiff's death or injury; and (2) whether the willful misconduct alleged in the complaint squares with the definition of willful misconduct provided by the Act. Turning first to the proximate cause question, the Supreme Court recently revisited the definition of proximate cause:

> The *term* "proximate cause" is shorthand for a concept: injuries have countless causes, and not all should give rise to legal liability.  *See* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on Law of Torts* § 42, p. 273 (5th ed. 1984) (hereinafter Prosser and Keeton).  "What we . . . mean by word 'proximate,'" one noted jurist explained, is simply this: "[B]ecause of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point."  *Palsgraf v. Long Island R. Co.*, 162 N.E. 99, 103 (1928) (Andrews, J., dissenting).

*CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692–93 (2011).  The Sixth Circuit has described "proximate cause" as a legal mechanism that "prevents liability where there is not a sufficient link between the defendant's conduct and the plaintiff's injuries."  *Crosby v. Twitter, Inc.*, 921 F.3d 617, 623 (6th Cir. 2019).  It requires the court "to draw a line somewhere in the sand—refusing to extend liability beyond a certain point."  *Id.*  Factors like "substantiality, directness, and

foreseeability," are all "'relevant in a proximate cause determination,' though these concepts may overlap." *Calcutt v. Fed. Deposit Ins. Corp.*, 37 F.4th 293, 329–30 (6th Cir. 2022) (quoting *Crosby*, 921 F.3d at 624)).

Courts within the Northern District of Ohio have observed a causal disconnect between "improper testing" and a decedent's death in cases similar to the case at bar. In *Burris v. Montefiore*, No. 1:21-cv-02143, 2022 WL 1120374, at *6 (N.D. Ohio Apr. 14, 2022), the Court looked at the breadth of the Complaint and refused to read "improper and false testing" in a vacuum:

> "The word "conduct" means "to direct or take part in the operation or management of; to direct the performance of; to lead from a position of command." *Conduct*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/conduct (last visited 4/13/2022). In other words, Burris alleges that Defendants directed, managed, and/or led improper *and false* COVID-19 testing efforts, including by intentionally falsifying test results to hide their facility's burgeoning COVID-19 case numbers. This Court declines to construe Burris's allegations that Defendants "recklessly, intentionally, willfully, and wantonly conducted improper and false testing" to mean that Defendants acted with malicious intent in the actual administration or use of a nasal or cheek swab on any given person, including [the decedent]. Rather, the Court construes these allegations to be part and parcel of Burris's allegations that Defendants directed or managed an intentional effort to falsify and hide positive COVID-19 test results from residents to obscure the COVID-19 outbreak coursing through the facility.

*Spring v. Montefiore Home*, No. 21-cv-02124, 2022 WL 1120381, at *6 (N.D. Ohio Apr. 14, 2022) takes a similar approach:

> The Court construes the Estate's allegation that Defendants "improperly ran" COVID-19 test results to be part and parcel of its allegations that Defendants oversaw an intentional effort to falsify and hide positive COVID-19 test results from residents to obscure the facility's COVID-19 outbreak.

Here, the willful misconduct relating to the use or administration of a covered countermeasure—the allegation that "[Defendants] were negligently, recklessly, and with

malicious intent conducting improper [COVID-19] testing" (ECF No. 1-1, PageID# 11, ¶ 16)—is not alleged to be the proximate cause of Decedent's death.  The Complaint instead alleges that the *results* of those tests were falsified, depriving Decedent of the opportunity to avoid exposure, resulting in his illness, further negligent and/or reckless medical care, and eventually, death.  (ECF No. 1-1, PageID# 11–13).  That Decedent was administered a COVID-19 test at all is not obvious on the face of the Complaint, but assuming that he was, the administration of the test is too attenuated to be considered the proximate cause of Decedent's death; the allegation of improper administration of a COVID-19 test is insubstantial in light of the Complaint's other allegations and without any direct corollary to Decedent's death.  In other words, the administration of the test—the sole "covered countermeasure" at issue here—is not the snowball that started the avalanche under even the most liberal reading of the Complaint.

Defendants' argument commits the same error as *Rachal*, conflating general PREP Act claim requirements with the exception to the Act (claims for willful misconduct), in which the willful misconduct must be the "proximate cause" of the Decedent's serious injury or death.  42 U.S.C. § 247d-6d(d)(1)  Here, there is no allegation that Defendants' affirmative, allegedly willful "improper testing" proximately caused Decedent's death.  Like *Burris* and *Spring*, the Court reads "negligently, recklessly, and with malicious intent conducting improper testing and falsifying tests" to be part and parcel of Plaintiff's allegations that "Defendants directed or managed an intentional effort to falsify and hide positive COVID-19 test results from residents to obscure the COVID-19 outbreak coursing through the facility."  *Burris*, 2022 WL 1120374, at *6.  (ECF 1-1, PageID# 11).

a. *Willful Misconduct*

In addition to the Complaint's lack of allegation that Defendants' willful misconduct proximately caused Decedent's death, the Complaint also does not allege the sort of "willful misconduct" that is covered by the PREP Act. Subsection (c) of the Act defines willful misconduct as "an act or omission that is taken—(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." 42 U.S.C. § 247d-6d(c)(1).

The Complaint in this case is identical to the complaint in *Friedman*. Here, like *Friedman*, the Complaint does not allege that Defendants conducted improper testing and falsified tests "to achieve a wrongful purpose." (ECF No. 1-1, PageID# 11); *Friedman v. Montefiore*, No. 1:21-cv-2083, --- F. Supp. 3d ----, 2022 WL 3584481, at *7 (N.D. Ohio July 11, 2022). The Complaint also does not allege that Defendants acted "knowingly without legal or factual justification." (*Id.*); *id.* (citing 42 U.S.C. § 247d-6d(c)(1)(A)(ii)). As explained in *Friedman*:

> Rather, with respect to Friedman's allegations that defendants falsified COVID-19 test results, the complaint provides that these actions were committed "negligently, recklessly, and with malicious intent[.]" It further describes these actions as showing "a lack of care so great that it is a conscious indifference to the rights of others and gross negligence." While these are serious allegations, to be sure, they do not rise above the level of negligence or recklessness under state law. *See, e.g.*, *Gonzalez v. CF Watsonville West, LLC*, No. 21-cv-9769, 2022 WL 227159, at *2 (N.D. Cal. Jan. 26, 2022) (finding allegations of recklessness did not fall within the PREP Act's willful misconduct provision); *Hereford v. Broomall Operating Co.*, 575 F. Supp. 3d 558, 562 (E.D. Pa. 2021) (stating that, even though plaintiffs referred to knowing disregard and reckless disregard of various consequences that created recklessly high risk to patients, "I do not see where any of the Plaintiffs have pleaded that Broomall acted 'knowingly without legal or factual justification' and with an intent 'to achieve a wrongful purpose'"). The fact that the complaint alleged that this "reckless disregard for the consequences" amounted to "intentional misconduct or willful or wanton misconduct" does not bring this claim "within the bounds

of the [PREP] Act." *Hanson v. Brandywine Nursing & Rehab. Ctr., Inc.*, No. 21-649-CFC, 2022 WL 608968, at *2 (D. Del. Jan. 19, 2022).

*Friedman*, 2022 WL 3584481, at *7.

This Court sees no reason to depart from the well-reasoned analysis performed in *Friedman* concerning a virtually identical complaint and virtually identical allegations.

Furthermore, like *Friedman*, even if Plaintiff's willful-misconduct claim was within the PREP Act's scope, one claim which may be preempted does not support Defendants' argument in support of *complete* preemption. This is because "finding that one claim *may* be preempted is different than finding that the federal statutory scheme is so comprehensive that it *entirely supplants* state law causes of action, such as [Plaintiff's] other causes of action [sounding in medical malpractice, nursing home neglect], negligence, and wrongful death." *Friedman*, 2022 WL 3584481, at *8 (quoting *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 688 (9th Cir. 2022)). Complete preemption cannot exist where the plaintiff could not have brought his other state law claims under the same statute. *Id.* There is no question that nearly every allegation in the Complaint relates to negligent and/or reckless actions or failures to act that allegedly resulted in Decedent's death. These are the same acts and omissions that courts across the country—and this District Court, in particular—have consistently held raise state law claims that are not preempted by the PREP Act.

Defendants have the burden of establishing federal question jurisdiction upon removal. *Nowicki-Hockey v. Bank of Am., N.A.*, 595 F. App'x 420, 421 (6th Cir. 2014). Since the PREP Act does not completely preempt state law as it relates to Plaintiff's Complaint, and since Plaintiff's willful-misconduct allegations do not fall within the scope of the PREP Act, Defendants cannot meet their burden, and therefore, remand is required.

### iii.  Federal Officer Removal

Defendants secondarily argue that this action is removable under the federal officer removal statute.  Under 28 U.S.C. § 1442(a), certain officers of the United States may remove actions to federal court.  To utilize the Federal Officer Removal Statute, the officer–defendant must: (1) be a person within the meaning of the statute who acted under the United States, its agencies, or its officers; (2) be sued "for or relating to" an act under color of federal office; and (3) raise a colorable federal defense to the claims.  28 U.S.C. 1442(a)(1).  *See Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010).  Private parties may invoke the federal officer removal statute if they can show that they satisfy these requirements.  *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007).  The disputed element in this case is the "acting under" requirement.

The phrase "acting under" in section 1442(a)(1) is broad and receives liberal construction, but it is not limitless.  *Watson*, 551 U.S. at 147.  Merely complying with federal laws and regulations does not amount to "acting under" a federal officer, even for a private party whose "activities are highly supervised and monitored" under detailed regulations.  *Id.* at 153.  To avail themselves of the removal statute, private parties must show that their actions "involve an effort to assist, or to help carry out, the duties or tasks of the federal superior."  *Id.* at 152.

Defendants allege that they were "acting under" federal authority when they responded to the COVID-19 pandemic as operators and employees of a nursing home participating in the Medicare and Medicaid programs.  (ECF No. 18, PageID# 162).  Defendants claim that nursing homes "essentially became extensions of CMS" during the COVID-19 public health emergency.  *Id.*  This argument is identical to the argument advanced by Defendants in *Friedman*; the Court rejected it.

Like *Friedman*, Defendants cannot show that they acted under federal authority within the meaning of the removal statute.  At most, the nursing home and its employees complied with regulations and orders promulgated by CMS during the pandemic.  Defendants, however, are not government contractors, are not delegated federal authority, and do not provide a service that the federal government would otherwise provide.  *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 153 (2007) (explaining that private contractors that fall within the federal officer removal statute help the Government to produce an item or provide a service that it needs); *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 469 (3d Cir. 2015) (holding that the Federal Community Defender was acting under a federal agency because it provides a service the federal government would itself otherwise have to provide); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir. 2010) (holding that the defendant acted under federal authority because it performed a job that, in the absence of a contract with the defendant or another private firm, a federal agency would have had to perform).

Defendants cite no case law in support of their argument in favor of application of the federal officer removal statute, likely because no federal court—district or circuit—has found in Defendants' favor.  *See, e.g.*, *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 404 (3d Cir. 2021) (explaining that CMS's nursing home regulations are guidelines rather than directives and do not connote the type of control or close relationship with the government necessary to invoke the federal officer removal statute); *Mitchell v. Advanced HCS, LLC*, 28 F.4th 580, 590–91 (5th Cir. 2022) (describing CMS's authority over nursing homes as "permissive guidance," "best practices," "helpful suggestions," and "aspirations and expectations, not mandates," and noting that CMS's compliance investigations into nursing home facilities are not enough to trigger the federal officer removal statute);  *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210, 1213 (7th Cir. 2022)

(rejecting a nursing home defendant's argument in favor of removal based on the federal officer removal statute, stating: "Private firms retain their private character even when many aspects of their conduct are controlled by federal statutes and rules"); *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, (9th Cir. 2022) ("Without more than government regulations and recommendations, [the nursing home defendant] has failed to establish that it was 'acting under' a federal official, and it has not identified a duty of the federal government that it performed.").

Interestingly, Defendants themselves have been on the receiving end of multiple district court rulings against application of the federal officer removal statute in other cases bearing a near identical resemblance to the case at bar. *See, e.g.*, *Friedman v. Montefiore*, No. 1:21-cv-2083, ---F. Supp. 3d ----, 2022 WL 3584481, at *10 (N.D. Ohio July 11, 2022) (finding that Defendants' compliance with CMS regulations and guidelines falls short of establishing that they were acting under a federal officer); *Rosen v. Montefiore*, 582 F. Supp. 3d 553, 561 (N.D. Ohio 2022) (holding that Defendant's compliance with CMS regulations does not satisfy the "acting under" requirement of the federal officer removal statute); *Singer v. Montefiore*, 577 F. Supp. 3d 633, 644 (N.D. Ohio 2021) (observing that CMS's nursing home regulations during the COVID-19 pandemic were less extensive than the FTC regulations of the tobacco industry in *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007), in which the Supreme Court rejected application of the federal officer removal statute); *Burris v. Montefiore*, No. 1:21-cv-2143, 2022 WL 1120374, at *7 (N.D. Ohio Apr. 14, 2022) (explaining that Defendant Hyman, who alone raised the federal officer removal argument in response to a motion to remand, "is not a government contractor, is not delegated federal authority, and did not provide any service that the federal government would otherwise provide"); *Spring v. Montefiore Home*, No. 1:21-cv-2124, 2022 WL 1120381, at *6 (N.D. Ohio

Apr. 14, 2022) (same); *Wimberly v. Montefiore*, No. 1:21-cv-2126, 2022 WL 1120394, at *6 (N.D. Ohio Apr. 14, 2022) (same).

This Court agrees with the so-far unanimous holdings from circuit and district courts alike rejecting application of the federal officer removal statute in similar PREP Act cases. Defendants' regulation by CMS is not the same as Defendants "acting under" federal officers or agencies. *See Watson*, 551 U.S. at 143; *Martin*, 37 F. 4th at 1213. Defendants cannot show that their participation in Medicare and Medicaid or their regulation by CMS satisfies the "acting under" provision of the federal officer removal statute because nursing homes do not "assist, or [] help carry out, the duties or tasks of [a] federal superior." *Mitchell*, 28 F.4th at 591 (citing *Watson*, 551 U.S. at 153). Defendants have not identified a duty of the federal government that they perform. *See Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, (9th Cir. 2022).

In sum, Defendants have failed to show that they are entitled to removal under section 1442(a). Accordingly, this matter must be remanded to state court.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Remand. This matter is hereby REMANDED to state court.

**IT IS SO ORDERED.**

**September 21, 2022**

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**